J. C. WALKER AND OTHERS v. L. MYERS AND OTHERS.

1. See the facts of this case for an instrument made in 1835, which is held to be in some respects an absolute conveyance of land, and in other respects to be in the nature of a bond for title.

2. Neither the second nor other sections of the now repealed Act of February 2d, 1844 (Hartley's Digest, Articles 1070–1; Paschal's, pp. 315–6), conferred on the probate courts jurisdiction to entertain a petition against an administrator, to compel a surrender by him of title-papers which came to his hands as effects of his intestate. The fourth section of that Act did empower the District Courts, in a proceeding against an administrator founded on bonds or obligations of his intestate, to decree a conveyance of real estate; but it conferred no such power on the probate courts. It was error, therefore, in an action of trespass to try title, to admit as evidence of title records of a probate court, exemplifying decrees of the unwarranted character above indicated, rendered in 1844, while the Act above referred to was in force.

3. No presumptions can aid a judgment of a court of limited jurisdiction when the record of the court showed that the court had no jurisdiction of the proceeding in which the judgment was rendered.

APPEAL from Anderson. Tried below before the Hon. John G. Scott.

This suit was trespass to try title to a league of land in Freestone county, where the suit was first brought, but from which it was removed to Anderson county by change of venue. The original petition was filed in Freestone, November 28th, 1861, and the venue changed to Anderson at the fall term, 1864, of the Freestone District Court.

The plaintiffs, originally, were Maria Smith and Louisiana Smith, a minor. Pending the litigation the latter changed her

surname by marriage with Samuel Myers, who thereupon became a party plaintiff in right of his wife.

The original defendants were James C. Walker and numerous others, but by disclaimer and death they were reduced in January, 1871, when the judgment below was rendered, to John M. Thorn, against whom judgment final passed by default, and James C. Walker, L. D. Bradley, John M. Sparks, and William Clark, as administrator of Elijah Allen, deceased.

By agreement of the parties, the case was tried by the court without a jury.

Both plaintiffs and defendants claimed to have derived title under Richard Sparks, deceased. His title was from Wiley M. C. Jones, who was the grantee under George Antonio Nixon, as Commissioner of Burnett's Colony. It was admitted that this grant to Jones, dated July 17th, 1835, was valid.

Jones's transfer to Sparks appears to have been made a few days prior to the date of the Commissioner's title to Jones, and reads as follows:

" Nacogdoches, 9th July, 1835.

"Know all men by these presents that I, Wiley M. C. Jones, " am held and firmly bound unto Richard Sparks, of the Mu-" nicipality of Nacogdoches, in the penal sum of five hundred " dollars, the payment well and truly to be made, for which I bind " myself and my property, both personal and real, now in pos-" session or to be hereafter possessed under the laws of this " Municipality or any other jurisdiction of the Mexican States " generally.

" The condition of the above obligation is such that, whereas " I, the said Wiley M. C. Jones, have this day granted, bar-" gained, and sold unto the said Richard Sparks, all my interest "in and to my headright of one league of land entered "and surveyed by William Brookfield on the Trinity River, "under the Colonization Law, in D. G. Burnett's grant, for and "in consideration of two hundred dollars to me in hand paid, "the receipt whereof is hereby acknowledged :—Now, I, the "said Jones, bind myself in the sum of three hundred dollars

"aforesaid, to stay and remain in the jurisdiction of the Mexi-
"can States, for the term required by law to give a full and
"complete title to said Sparks of said land, and to comply with
"all the requisitions in law in such cases made and provided,
"and warrant and defend the title of said land to said Sparks,
"or heirs, administrators, or assigns, and when the same shall
"be done and performed, then this obligation shall be null and
"void, otherwise remain in full force and virtue in law, as wit-
"ness my hand and seal this day and date above written.

WILEY M. C. JONES.

"Signed, sealed and delivered }
       in the presence of        }

                    "WM. K. ENGLISH.
                    "H. A. JOHNSON."

The title of Sparks under this transfer being admitted by
both parties to this suit, and forming the basis of the rights of
both parties, as both claimed under Sparks, no question of its
validity arises in the case; but as it is construed and commented
on in the opinion, it has been here inserted in full. Previous
to August 28th, 1855, the original of this paper must have
been on file in the probate court of Nacogdoches county; for
on that date, John M. Sparks, one of the present defendants,
petitioned that court to allow him to withdraw it from the files
of the succession of Richard Sparks, and on the same day the
court accorded his petition, but required him to leave a certi-
fied copy on file in lieu of the original.

The trial of this case was had in the court below at its De-
cember term, 1870. It was admitted that the plaintiffs (appel-
lees) were the heirs of Erastus Smith, deceased; and to de-
raign title from Sparks, they introduced two transcripts from
the records of the probate court of Nacogdoches county, of its
August term, 1844.

The first of these transcripts exemplified the petition of
Erastus Smith against Elizabeth Sparks, administratrix of

Richard Sparks, deceased, and the orders thereupon made. The petition was filed August 14th, 1844, as follows:

"The Republic of Texas, ⎰ To the Honorable the Probate
"County of Nacogdoches.  ⎱    Court of said county:

"The petition of Erastus Smith humbly showeth that hereto-
"fore, to wit, on the twenty-second day of July, one thousand
"eight hundred and thirty-seven, he placed in the hands of
"Richard Sparks, late of said county, deceased, a title issued by
"the Commissioner G. A. Nixon to Wiley M. C. Jones for one
"league of land, also said Jones' bond for title to the same, with
"a power of attorney to said Richard, and that said Richard
"agreed and bound himself, as agent of your petitioner, to pro-
"cure a title to your petitioner from said Wiley M. C. Jones for
"said league, as will more fully appear by reference to a receipt or
"obligation of the said Richard which is here to the court shown.

"Your petitioner further showeth that the said Richard Sparks
"before procuring the said title departed this life, and that
"Elizabeth Sparks is the administratrix upon his estate; where-
"fore your petitioner prays that the said Elizabeth Sparks, ad-
"ministratrix as aforesaid, be cited to be and appear at the next
"term of the probate court, to be holden for said county, and
"that she be adjudged to deliver to your petitioner or his at-
"torney the title bond and power of attorney aforesaid; and
"your petitioner will ever pray, etc.

                          "RUSK & HENDERSON,
                               "Attorneys *pro* SMITH."

The transcript set out the citation issued on the 15th of August, 1844, to Elizabeth Sparks, to appear before the court "on Monday, the 26th instant, to answer, as administratrix of "Richard Sparks, the demand contained in the within petition;" and also recited the return of service of the citation made by the sheriff on the administratrix Elizabeth, August 20th, 1844. Next the transcript stated that the matter was continued; and then set forth that on the 30th day of September, 1844, an entry was made in the minutes of said court in these terms, to wit:

"Erastus Smith v. Elizabeth Sparks, Administratrix of "Richard Sparks, deceased. In this case the petition having "been read and duly considered, it is ordered by the court that "the said administratrix do surrender to the said Erastus Smith "the bond and power of attorney in said petition mentioned, "said Smith to pay the costs of his procedure."

To the introduction of this transcript as evidence the defendants excepted on several grounds, to wit: first, for want of jurisdiction of said county court over the subject matter of the petition; second, for irrelevancy; third, because defendants were neither parties nor privies to the proceedings therein contained; fourth, because the recitals in said transcript were secondary—were hearsay, and not the best evidence of the alleged bond, power of attorney, and receipt, the originals being unaccounted for; fifth, because said decree could not affect the community interest of Mrs. Sparks, or those claiming under her. These exceptions, being overruled by the court, were duly reserved by the defendants.

The second transcript introduced by the plaintiffs recited that on the 15th of August, 1844, a petition was filed in the clerk's office of the probate court for Nacogdoches county, Texas, in terms following, to wit:—

"The Republic of Texas, ) To the Honorable the Probate "County of Nacogdoches. ) Court of said county:

"The petition of John C. Morrison humbly showeth that Wi-"ley M. C. Jones, late of said county, hath departed this life, "and, so far as your petitioner is informed and believes, without "leaving any will; that the estate of the said Wiley M. C. Jones "has never been administered upon, and that the succession is "still vacant:—Wherefore your petitioner prays that he be ap-"pointed administrator of the estate of the said Wiley M. C. "Jones,—and your petitioner will ever pray, etc. 14th August, "1844.

"RUSK & HENDERSON,

"Attorneys for petitioner."

The transcript then showed an order that the usual notice issue, and that on the 26th of August, 1844, an entry was made continuing the matter until the next regular term of the court, to be held on the 30th of September, 1844; at which term Morrison was appointed administrator, on taking the oath prescribed by law, and giving bond in one thousand dollars. The transcript exemplified the bond as made on the 14th of January, 1845, and the oath as of the 16th of the same month; and then proceeded to set out that on January 17th, 1845, a petition was filed in the terms following, to wit:

"The Republic of Texas,    To his Honor, William W.
"County of Nacogdoches.  } Wingfield, Chief Justice of the
"County Court, and judge of the probate court of said county:
    " The petition of Erastus Smith humbly showeth that Wiley
"M. C. Jones, late of said county, on the ninth day of July, one
"thousand eight hundred and thirty-five, made and delivered to
"one Richard Sparks his bond in the sum of five hundred dol-
"lars, conditioned that if the said Jones should make to the said
"Sparks title to one league of land, his headright, surveyed by
"William Brookfield on the Trinity River, said bond to be void,
"else remain in full force and virtue; and afterwards, to wit, on
"the twenty-second day of July, one thousand eight hundred and
"thirty-seven, the said Richard Sparks sold the said tract of land
"to your petitioner, and obligated himself to procure title to
"your petitioner for the same.
    " Your petitioner further showeth that after the making of
"said bond by the said Jones, and after the sale of said land to
"your petitioner by the said Sparks, and before the making of
"the title to the same, both said Wiley M. C. Jones and Rich-
"ard Sparks departed this life. Your petitioner further show-
"eth that John C. Morrison of said county is the administrator
"upon the estate of said Wiley M. C. Jones; wherefore he
"files this petition, and prays that John C. Morrison be cited
"to appear at the next term of the probate court, to be holden
"in and for said county, and that he be ordered, adjudged, and

" decreed, as administrator aforesaid, to make to your petitioner
" title for the league of land aforesaid, according to the tenor
" and effect of said bond.

" RUSK & HENDERSON,<br>
" Attorneys <i>pro</i> SMITH."

" I acknowledge service of the within, waiving the necessity
" of copy, citation, and service.   January 17th, 1845.

" JOHN C. MORRISON."

The transcript then recited that on January 27th, 1845, an
entry was made in the minutes of said court in terms following,
to wit:

" Erastus Smith *v.* John C. Morrison, Administrator of Wiley
" M. C. Jones:

" In the above stated case, it appearing to the court that
" Erastus Smith is the legal owner of a bond executed by the
" said Wiley M. C. Jones to Richard Sparks, conditioned to
" make title for one league of land therein described, being the
" said Jones's head-right : It is therefore ordered, adjudged, and
" decreed by the court that John C. Morrison, administrator of
" the estate of Wiley M. C. Jones, do execute title to said
" Erastus Smith for the league of land mentioned in said bond,
" upon his filing said bond with the clerk, with evidence of the
" transfer of the same from Richard Sparks."

The next proceeding shown by the transcript was an entry
made on the 2d of October, 1847, directing that citation issue
to Morrison to make settlement of Jones's estate at the next
term.   Citation and service follow, and then a continuance of
the matter at the November term, 1847 ; after which the tran-
script recites that on the 3d of February, 1848, a petition was
filed by Morrison, as follows :

" To the Hon. William Hart, probate judge of the county of
" Nacogdoches :

" The petition of John C. Morrison, administrator of said
" estate, represents, that since the taking out of letters of
" administration, no inventory has been filed, because there

" were no assets belonging to the estate except one-third of a
" league of land for which, prior to his decease, the said Wiley
" M. C. Jones had executed his title bond, and which title your
" petitioner was subsequently required, by an order of this
" court, as will appear of record, to perfect, and which has been
" done. Your petitioner has never received any funds or
" property belonging to the said estate, and therefore prays to
" be discharged from his office. All of which is submitted,
" Nacogdoches, February 1st, 1848. John C. Morrison, being
" duly sworn, says that the foregoing petition is true.

" JOHN C. MORRISON."

"Sworn to and subscribed before me, this 3d day of Febru-
" ary, 1848.

" WM. HART, Probate Judge."

And this transcript concluded with an order of February
3d, 1848, discharging Morrison from further administration,
etc.

To this transcript, when offered as evidence by the plaintiffs,
numerous objections were taken by the defendants, substantially
as follows: first, that the probate court of Nacogdoches county
had no jurisdiction to open administration on Jones's estate,
when it did not appear that Jones had a fixed domicile in that
county, nor that he died therein, or left therein any real estate
or his principal effects; second, that no necessity for an admin-
istration was shown; third, that the order prayed for against
Morrison by Smith could not be granted by the probate court
on Smith's petition, for want of jurisdiction in the court to
grant such an order except upon the administrator's own peti-
tion, as provided by the 2d Section of the Act of February 2d,
1844; fourth, that the requisites of said act were not complied
with, as is apparent on the face of the transcript, and as is
proved by evidence *aliunde;* fifth, that the decree of the pro-
bate court directing Morrison to make the title is void for want
of certainty, and because by it the court attempted to transfer
its judicial powers to its clerk; sixth, that at Jones's death he

left no interest in the land to which an administration could attach, because the instrument from Jones to Sparks was an absolute conveyance, and not such an executory contract as provided for in the Act of 1844; seventh, that the transcript did not show any written obligation from Sparks to Smith, and it was only when the obligation was in writing that the court could have jurisdiction; eighth, that certain testimony of Morrison and another witness, submitted along with these exceptions, show the proceedings in the probate court to have been fraudulent and void, and that the decree was procured by fraud and collusion; ninth, that the decree was never recorded in Freestone county, where the land lay, nor in any county out of which Freestone had been created, and it cannot therefore be evidence against the defendants; and tenth, that at the time of the decree the record showed that Richard Sparks was dead, and that the land was community property of him and his surviving wife, Elizabeth, and therefore the decree could not affect her, or those claiming under her. These objections were all overruled, and the transcript admitted as evidence, and the defendants filed their bill of exceptions.

Plaintiffs then read the deed to Erastus Smith, made by Morrison as administrator of Jones, on the 6th of March, 1846, and purporting to convey the land in question, in obedience to the order of the probate court already inserted. To this deed the defendants also objected, for substantially the same causes assigned by them against the transcript of the probate court in the matter of Morrison's administration; but the court admitted the deed, and they reserved exceptions.

Plaintiffs also put in evidence a decree of partition of Richard Sparks's estate among parties entitled thereto as his heirs or as assignees of his heirs. It was entered by the probate court of Nacogdoches county, at its February term, 1851, and was rendered on the agreement of the parties to it; two of whom were Frost Thorn and Haden Edwards, assignees of five of the heirs of Sparks. It made partition of many different tracts, and purported to comprise all the real estate of Richard Sparks; but it

made no mention or allusion to the Wiley Jones league in controversy in this suit. The plaintiffs offered it, therefore, as evidence of an admission of Sparks's heirs and their assigns, that they had no title to or interest in the league now in suit. The defendants also objected to this evidence, and on its admission reserved exceptions; but as the opinion of this court does not specifically notice these features of the case, it is not deemed necessary to detail them.

The defendants introduced the deposition of John C. Morrison, who testified that Jones died previous to September, 1844, leaving no property in Nacogdoches county; that witness administered on his estate at the instance of General Thomas J. Rusk, and because Wingfield, the probate judge, told him that some one had to administer in order to make a deed for Jones's head-right, and that it would be no trouble. That the administration was opened for the purpose of perfecting the title of Smith, who claimed to have purchased the land from Sparks; and that General Rusk attended to the business both for Smith and for witness. That the probate court passed an order directing witness to make a deed for the land to Smith, upon his producing evidence of his title to the same; that General Rusk brought the deed for witness to sign, and he and Wingfield said it was all right, and on their representations witness signed it. Witness does not recollect that he ever filed or presented the title bond from Jones to Sparks; nor does he recollect that any evidence of a transfer from Sparks to Smith was ever presented to him or in his possession.

Defendants also read the deposition of J. F. Hunter, who proved that he was then clerk of the county court of Nacogdoches county, and had examined the papers and records in his office, pertaining to the estates of Wiley M. C. Jones and Richard Sparks, and could find no evidence of any bond for title, or transfer, from Sparks to Erastus Smith for the land in controversy.

The defendants adduced evidence of their title as heirs, or as assignees of heirs, of Richard Sparks; but as the rulings of this

court treat only of the plaintiffs' muniments of title, there is no occasion to notice particularly those of the defendants.

The court below rendered judgment for the plaintiffs, and overruled a motion for a new trial made by defendants, and they appeal.

. The briefs of counsel in this case are required by the opinion to be inserted at greater length than might otherwise appear requisite.

After the decision of this case by this court, the Hon. George F. Moore, in behalf of the appellees, moved that the judgment rendered by this court be reformed so as merely to reverse the judgment below and remand the cause for a new trial, instead of the final judgment entered for appellants by this court. His very able argument in support of this motion reviewed the previous cases in which this court had exercised its power to render judgments upon reversal of the judgments of the District Courts. In consideration of the importance of the question of practice thus presented, and in view of the intrinsic force of the reasoning of the argument, as well as of its useful collocation of the cases, and other merits, space is made for its insertion in this report.

*James C. Walker*, and *Bonner & Bonner*, for the appellants. There are four errors assigned for the consideration of this court. We herein present the second and third only.

. I. The second error assigned is, that the court erred in overruling defendants' objections to the introduction of the evidence offered by plaintiffs, as shown by the several bills of exceptions, Nos. 1, 2, 3, 4, taken on the trial of said cause.

We need but advert to the elementary principle, that the plaintiffs must recover in this suit on the strength of their own title, and that if any material link in their chain of title is defective, they must fail.

The appellees claim title to said land as follows: that said grantee, Jones, conveyed the same by an instrument which they style a title bond to Richard Sparks; that said Richard

Sparks sold the land to Erastus Smith, through whom they claim; but how the sale to Smith was made, whether by transfer of the alleged bond, whether by deed to the land, or whether verbally, and what consideration, if any, was paid, neither the pleadings nor the evidence discloses. That by certain proceedings of the probate court of Nacogdoches county, the title which was alleged to have been in the estate of said Jones, it is attempted to be shown, was divested out of his estate, and vested in the said Erastus Smith.

The appellants claim, that by the conveyance introduced in evidence, from Jones to Richard Sparks, the title to said land was vested in the estate of said Sparks, was inventoried as property of his estate, descended to the heirs of the said Richard Sparks, to wit: Andrew J. Sparks, Thomas B. Sparks, and John M. Sparks, as shown by agreed facts; that a portion of this interest was purchased by the defendant, L. D. Bradley, the remaining interests being represented by the other defendants in this suit.

Should plaintiffs fail to show a legal, valid, and binding judgment of the probate court of Nacogdoches county, upon which they rely as a material link in their chain of title, or fail in any other material link, they must necessarily be defeated in this suit, regardless of the claim of defendants; and as it is shown that defendants have been in the actual possession of the land since 30th December, 1856, under a regular chain of title from and under the sovereignty of the soil, a portion of them being favorites in a court of equity, *bona fide* purchasers for value, without notice, it is evident that the plaintiffs must fail in this suit, not only by reason of the weakness of their own title, but also by reason of the strength of defendants' title.

We respectfully submit, that the plaintiffs have failed to deraign their title by competent and satisfactory evidence, either from the said Richard Sparks, or from the estate of said Jones.

To the introduction of the testimony on this point, four bills of exceptions were taken on the trial, as shown in said second assigned error.

We will first consider the objections to the testimony taken in bill of exceptions No. 2.

1. Bill of exceptions No. 2 was taken to the introduction in evidence of the proceedings and judgment of said probate court, in the matter of Erastus Smith v. J. C. Morrison, administrator of Jones.

The preliminary question arises, as to what extent can the proceedings and judgment of said probate court, the same being a court of limited jurisdiction, be inquired into and impeached collaterally.

If a judgment from any cause be null and void, it can give no right, and afford no defense—as, for the want of jurisdiction; failure to be rendered by the proper court, or judge, and at the proper time and place ; want of the requisite certainty ; fraud.

" The doctrine that a judgment stands until reversed for " error, or set aside for fraud, does not apply when the want of " jurisdiction is made the question. This may always be set " up when a judgment is sought to be enforced, or any benefit " is claimed under it. (Fitzhugh v. Curtis, 4 Texas R., 391 ; " McCoy v. Crawford, 9 Texas R., 353 ; Thouvenin v. Rodri- " guez, 24 Texas R., 468.)

" The principle that the judgment of a court acting without " authority is null, seems to be of universal application. The " only difference in its effects on the courts of general and of " special or limited jurisdiction is that, in support of the " former, jurisdiction is presumed, while to sustain the latter " jurisdiction must be shown." (Horan v. Wahrenberger, 9 Texas R., 313 ; Mitchell v. Runkle, 25 Texas R. (Sup.), 136–7 ; Elliott v. Piersol, 1 Peters, p. 328 ; Mills v. Martin, 19 John., 33. See also Easley v. McClinton, 33 Texas, 288.

Presumptions, however, arise only in the absence of proof ; and if the probate court of Nacogdoches county had been a court of general jurisdiction even, still no presumption in the case would arise, because the record shows affirmatively that this jurisdiction did not attach. (Withers v. Patterson, 27 Texas R., 491.)

Although different in subject matter, yet upon principle so perfectly parallel in so many features are the following authorities, that we quote with confidence that this court will readily see the application, and appreciate their force. In Spangler v. Jacoby, 14 Ill., 300, it is decided that the Constitution requires each House to keep a Journal, and declares that certain facts, made essential to the passage of a law, shall be stated therein. If these facts are not set forth, the conclusion is, that they did not transpire. It is the evidence of the action of the House, and by it the act must stand or fall. If the Journal is lost, presumptions may be indulged. When the Journal fails to show that the act was passed in the mode as prescribed by the Constitution, * * * the presumption is overcome and the act must fall. (See also Green v. Graves, 1 Doug., 351; State v. McBride, 4 Missouri, 303.)

It is reasonable to suppose the importance of these cases called forth the best talent, and eliminated the correct rule for the construction of special and limited powers, and is equally applicable in all cases involving the construction of special and limited powers or jurisdiction.

A judgment, or decree, is void, if not rendered by the proper court or judge, and at the time and place prescribed by law. (3 Bouv. Inst., Section 3302; Hodges v. Ward, 1 Texas R., 244.)

A judgment or decree is void if wanting in the requisite certainty. (Spiva v. Williams, 20 Texas R., 442.)

A judgment or decree obtained through fraud is void. (Borden v. Fitch, 15 John., 121; Drinkard v. Ingram, 21 Texas R., 654.)

First. The first objection taken in said bill of exceptions to said testimony, was the want of jurisdiction in said probate court to open administration on the estate of said Jones, for aught apparent in the record.

Jurisdiction is defined to be the power or authority which is conferred upon a court by the Constitution and laws, to hear and determine causes between parties, and to carry its judgments into effect. (Withers v. Patterson, 27 Texas R., 491.)

The probate court of Nacogdoches county had no authority under the laws then in force (Acts 1840; Hartley's Digest, Article 1030), to grant letters of administration on the estate of Jones, upon the petition of Morrison, for the reason that it was not shown therein that Jones had a fixed domicile or residence in that county, or that he had real estate in that county, or that his principal effects were in that county, or that he died in that county.

The allegation "late of said county" is not sufficient. If there was no authority to grant the administration, the whole proceedings were null and void. (George v. Watson, 19 Texas R., 354; Munson v. Newson, 9 Texas R., on p. 109.)·

*Second.* The second objection taken in said bill of exceptions was, that there was no necessity shown for an administration, no debts shown to exist, no property or funds whatever, and no reason shown why an administration should be had, and hence the whole proceeding was a nullity.

It will not be questioned but that the sole object of said administration was to enforce a compliance with the terms of said pretended title bond. But under the statute then in force (Hartley's Digest, 1071), the District Court, and not the probate court, was the proper tribunal, on the application for this purpose of any other party than the representatives of the deceased. Compare said Article 1071 with the preceding Article 1070. (Wardrup v. Jones, 23 Texas, 494, 495.)

*Third and Fourth.* The third and fourth objections taken in said bill of exceptions were substantially that the probate court of Nacogdoches county had no jurisdiction to render said judgment, upon the petition of Erastus Smith, against Morrison as administrator of Jones, as was done in this case; that said court could take jurisdiction in such cases on the petition of the administrator only; and that the requisites of the statute were not complied with.

Said proceedings and judgment were under Article 1070, Hartley's Digest. On comparing this with Article 1071, both parts of the Act of 2d February, 1844, it will be seen that the

former embraced cases cognizable in the probate court only, and the latter cases in the District Court only. Both courts are specially designated by name, and Congress was more than ordinarily minute and particular in its provisions and details. in reference to the probate court. As it was naturally supposed that the administrator should be best informed, and concerned only when his action would be, in the language of the statute, "beneficial and to the interest of the estate," and as he was subject more particularly to the immediate jurisdiction of the probate court, it was wisely provided that a compliance with the terms of outstanding bonds should be enforced in that court, only on his petition. As a safeguard, they further provided that the bond should be filed among the papers of the court, canceled by the probate judge, and the testimony be taken down in writing, signed by the witnesses, and preserved among the records of the court. Article 1071, on the contrary, prescribed rules for the guidance of parties other than administrators, and this in the District Court.

It is evident that Article 1070 was intended to provide for and protect the interest of the estate against third parties; and Article 1071 was intended to provide for and protect the interests of third parties against the estate. One was effected through a court of limited jurisdiction, having special cognizance of the administration of estates; the other through a court of general jurisdiction, open alike to all parties, and which from its inherent powers, could afford the proper relief. In the former the whole machinery of a regular suit is omitted.

Upon an inspection of the record of the probate court of Nacogdoches county, it will be found that the judgment of that court was rendered upon the petition of Smith v. Morrison, administrator, and not upon the petition of Morrison. By the statute, the petition of Morrison was necessary to invoke the jurisdiction of the probate court. If a resort to construction should be deemed necessary in this case, where the terms of the statute are so plain, it will be found that under a statute (Hartley's Digest, Article 1099) very similar in its terms, the Supreme

Court held that the petition was necessary to give jurisdiction. (Finch v. Edmonson, 9 Texas R., on p. 512.)

This case is not within the principle, and hence is not affected by the subsequent decision of Alexander v. Maverick (18 Texas R.), as is expressly mentioned in that decision. See also Jones v. Taylor, 7 Texas R., 240, which arose under the statute of 1848 (Hart. Dig., Article 1162), providing for the compliance by administrators with the title bonds of their. intestates. That statute differed from the one under consideration in this, that the holder of the bond, and not the administrator, was to take the initiative, and the Supreme Court, in that case, say that the authority conferred on the probate court is " special " and limited, and must be strictly pursued ; " that " the ven- " dee must file his complaint in writing ; that the chief justice, " in the exercise of his judgment, must find, and this of course " on satisfactory and competent evidence, that the sale was " legally made ; and the order must be for title in conformity " with the terms of the bond." (Jones v. Taylor, 7 Texas R., p. 244 ; Baker v. Chisholm, 3 Texas R., 157 ; Francis v. Northcoat, 6 Texas R., 185 ; Cowan v. Nixon, 28 Texas R., 230 ; Edmunston v. Edmunston, 2 Ohio, 252 ; McLary v. McLain, 2 Ohio (S.), 368 ; Bloom v. Burdick, 1 Hill, N. Y., 130 ; The People v. Krober, 7 Hill, N. Y., 41 ; Campbell v. Brown, 6 How. Miss. R., 106, Ibid., 230 ; Thatcher v. Powell, 6 Wheat., 119.)

The transcript of the proceedings of the Nacogdoches probate court shows affirmatively that not a single requisite of the statute was complied with.

There was no petition by the administrator, no proof even, much less the full proof of the bond required by statute, that a compliance with the terms of the bond would be beneficial to the estate, no filing and cancellation of the bond, and no testimony taken down in writing, and signed by each of the witnesses, and preserved among the records of the court.

*Fifth.* The fifth objection taken in said bill of exceptions, was, that said judgment of the probate court was void for want of certainty, and because said court transferred its judicial

powers to the clerk, to determine in his discretion material issues in the proceedings.

The judgment is in the following words: " It is therefore " ordered, adjudged, and decreed by the court, that John C. Mor- " rison, administrator of Wiley M. C. Jones, do execute titles to " said Erastus Smith for the league of land mentioned in said " bond, upon his filing said bond with the clerk, with evidence " of the transfer of the same from Richard Sparks."

The statute required the application to be made by the peti- tion of the administrator to the " probate court," " full proof " of the existence of said bond," " satisfactory evidence that a " compliance with the terms of said bond would be beneficial " to the interests of said estate : " that " the probate court shall " take possession of such instrument of writing, and file it " among the papers of the suit, and when the same is complied " with, it shall be canceled by the probate judge, and all the " testimony shall be taken down in writing, signed by each of " the witnesses, and preserved among the records of the court."

In utter disregard of all these express and stringent require- ments, the court transferred its judicial powers, to be exercised in session, to the clerk, to be exercised in his discretion in vaca- tion, and requires of him only a partial performance.

It is a clear principle, that " to be valid, a judgment must be " given by a competent judge or court, at a time and place ap- " pointed by law, and in the form it requires." (3 Bouv. Inst., Section 3302 ; Hodges v. Ward, 1 Texas R., 244.)

This exercise of judicial power is a personal trust, confided to a sworn officer, and cannot be delegated. (Thomas v. The State, 9 Texas R., 324.)

Again, it is a general principle, that the very object of a suit is to adjudicate and declare the respective rights of the parties with certainty, without the ascertainment and determination of additional facts ; and a judgment should contain in itself such precision and certainty as will enable it to be enforced, with- out reference to other entries. (Spiva v. Williams, 20 Texas R., 442.)

*Sixth.* The sixth objection taken in said bill of exceptions, was that the pretended bond introduced in evidence was not such an executory obligation as was contemplated by said statute, but, so far as to pass the title to said land, it was in law a deed absolute. By it the fee simple had already passed from said Jones during his lifetime, and there was no interest left in his estate subject to administration. Said instrument had all the requisites of a deed in fee simple; contained a receipt of the purchase-money, appropriate words of conveyance, clause of warranty of the title, etc. (Secrest *v.* Jones, 21 Texas R., 121.)

If the part which partakes of the nature of a bond could be construed so as to make it a conditional deed even, it was a condition subsequent and voidable, at the instance of the government, and not of the grantor, and could not impair the fee already vested in Sparks.

The conditional part of said instrument was an obligation on the part of Jones, as follows: That he would "stay and re-" main in the jurisdiction of the Mexican States for the term " required by law, to give a full and complete title to said " Sparks in said land, and to comply with all the requisitions in " law in such cases made and provided."

This condition was mere surplusage, and was made under a misapprehension of the law. (Edwards *v.* James, 7 Texas R., 379; Hancock *v.* McKinney, 7 Texas R., 446 to 454.)

There were no stipulations in said instrument to make a more perfect title at some future day. There was already a perfect title in Sparks, which needed no confirmation. The land was inventoried as the property of the estate of Sparks, and not as the property of the estate of Jones.

Said instrument being then a deed, and not a bond, the contingency upon which the jurisdiction of said probate court, under said Article 1070, could be called into exercise, did not exist, and it could not, as required by that statute, be in any wise shown that it was "to the interest" of Jones' estate that the terms of the bond be complied with.

Should it however be construed to be a bond, it is not such a bond as was contemplated by said Article. The bonds there referred to are bonds for the " conveyance of land." This at most was but a bond for a mere personal service—that of remaining in the Mexican States for a term of years, etc. If these terms and conditions had not been already complied with on the part of Jones, nearly ten years having elapsed, and as he was then dead, no court had the power to decree, in the language of the statute, a " compliance with the requirements " of said bond." Omnipotence only could do this ! Under the statute, the pleadings, and the prayer of Smith in the probate court, " that Morrison be ordered, adjudged, and decreed, " as administrator aforesaid, to make to your petitioner (Smith) " title for the league of land aforesaid, according to the tenor " and effect of said bond," clearly Morrison could not make a deed, when the alleged bond did not call for a deed, but for residence only, and that in favor of Sparks, and not Smith.

*Seventh.* The seventh objection taken in said bill of exceptions was, that it did not appear by the pleadings in said probate court that said alleged sale of land—there being no allegation of a transfer or sale of said bond—was in writing, as expressly required by said statute. (Otterhouse *v.* Burleson, 11 Texas R., 87 ; Peters *v.* Phillips, 19 Texas R., 70.)

That the pleadings must be taken most strongly against the party pleading is an elementary principle.

Facts not alleged, though proven, cannot form the basis of a judgment. (Chrisman *v.* Miller, 15 Texas R., 159 ; Paul *v.* Perez, 7 Texas R., 338.)

The presumption that it was a verbal sale, if a sale at all, is strengthened by the failure of the court to reduce the evidence to writing. It is not necessary to invoke the aid of the Statute of Frauds, for the act itself (Hart., Article 1070) required that the instrument should be "in writing." But, besides, at the date of this alleged purchase by Smith from Sparks (July, 1837), verbal sales of land were virtually inhibited by act of December 20th, 1836. (Paschal, Article 4980.) Such sales were

valid only when accompanied with possession. (Briscoe *v.* Bronaugh, 1 Texas, 326.) Neither Smith or any of the appellees ever had possession.

Without this, or registry, it could not have been valid against third persons. Even deeds were of no force or effect as to third persons unless recorded. (Paschal, Article 4983, 4994.) Again, no consideration was averred or proven. In the absence of a sealed instrument none would be presumed. It has been held by this court that if " there be no consideration in the bond named, then one must be averred and proved." (Tomlinson *v.* York, 20 Texas, 643.)

The sale must have been verbal, otherwise, why was not the written evidence of such sale averred, and " filed," and " can- " celed ? " And if Sparks obligated himself to procure titles, as alleged, why was not that obligation properly pleaded, " filed," and " canceled ? " And why were not both of these instruments (if " in writing") " preserved among the records of the court ? " or, if lost, why was there not some effort made to show the loss ? And why was there not some effort made to show their contents ? Instead of which, however, here, in this court, for the first time, they assert that said bond was transferred by Sparks to Smith by an indorsement on the back of the same, and that the " in- " dorsement went with the bond into the possession of John " M. Sparks, and that he should have produced it without notice."

The record does not afford a scintilla of evidence to this effect. But, to the contrary, the appellees themselves introduced the copy of the deed from Jones to Sparks contained in the transcript of the proceedings of the probate court of Nacogdoches county, as a link in their chain of title.

Now, that there was no such indorsement, or any such transfer of said instrument, is evident by comparing the copy introduced by the appellees and the certificate of the clerk of Nacogdoches county, as they appear in said transcript, with the copy and certificate of the clerk of Freestone county, introduced by appellants. We find no evidence whatever of any " can- " cellation," or of any such " indorsement."

Is it reasonable to suppose that both of those clerks would have omitted to notice in their certificates such " cancellation " or " indorsement," if any such had appeared on such bond ?

*Eighth.* The eighth objection taken in said bill of exceptions was, that there was no privity of contract alleged or shown between said Jones and Smith.

There was no allegation in said proceedings in the probate court that said alleged bond from Jones to Sparks was ever transferred to said Smith, but the allegation was that " the said " Richard Sparks sold the said tract of land to your petitioner " (Erastus Smith), and obligated himself to procure titles to " your petitioner for the same."

Neither was there any evidence of such transfer shown on said pretended trial. On the contrary, it affirmatively appears that no such transfer was presented to the court, as Morrison was ordered to make the title when the bond should be filed " with the clerk, with evidence of the transfer of the same " from Richard Sparks."

The clerk had no power to judge of the competency of the evidence or of the legality and sufficiency of the transfer, and if he had, it does not appear that any evidence whatever was introduced; and as it was required to be in writing, and as the record is silent, and as the clerk certifies that it is a complete record, and it so appears on its face, it is conclusive that no evidence was offered. Morrison testifies that he has no recollection that any such testimony was introduced.

It is not pretended that there was any contract between Jones and Smith. And there being no allegation that said bond from Smith to Sparks was ever transferred to Smith, but that the land was sold to him—it follows that there was no privity of contract between Jones and Smith. That privity is required in cases of this character has been expressly decided by this court, and hence Smith could not enforce a compliance of the bond of Jones in any court. (Allison *v*. Shilling, 27 Texas, 450.) Under our law the legal title vests in the heirs—the same was the rule under the Spanish civil law—and they are necessary parties to

a proceeding to divest them of the legal estate.    (Paschal, Note 517; Barrett *v.* Barrett, 31 Texas, 344.)

*Ninth and Tenth.* The ninth and tenth objections taken in said bill of exceptions were, substantially, that said proceedings and judgment of said probate court were of no binding force or effect against said defendants, and are no evidence in this cause, for the reason that the representatives of the estate of Richard Sparks were not parties or privies to said proceedings; and that the testimony of Morrison and Hunter, and the said proceedings, affirmatively show that said judgment was fraudulent and void.

Upon an inspection of the record, it appears that the proceedings and judgment of said probate court were between Morrison, administrator of Jones, and Erastus Smith. The representatives of the estate of Richard Sparks were in no wise parties thereto.

No person is bound by any decree or judgment to which he has not become a party in some of the modes known to the law. (McCoy *v.* Crawford, 9 Texas R., 353, and authorities there cited; Bertrand *v.* Bingham, 13 Texas R., 266.)

If the estate of Richard Sparks was not bound, it is clear that the community interest of Mrs. Elizabeth Sparks in said land, who was then living, and not a party to said proceeding, was not bound.    This question is also raised in another connection, and the mere statement of it is deemed sufficient.

Again, it is a general principle, that " fraud annuls all con- " tracts, and even the most solemn acts and judgments of courts " which are infected with it; and if it be shown that the judgment " was obtained by fraud, it is scarcely necessary to say it cannot " afford the basis of a recovery, though it may have been render- " ed on a just demand." (Drinkard *v.* Ingram, 21 Texas R., 654, Todd *v.* Caldwell, 10 Texas, 242.)

Fraud can be proved by circumstances.    (Briscoe *v.* Bronaugh, 1 Texas R., 326.)

The fact that Smith procured the administration to be had on the estate of Jones, and paid the costs; that there was no prop-

erty belonging to the estate, no debts, and no necessity for an administration; that the sole object to be effected by the administration, was to obtain the deed from Morrison as administrator, and this nearly ten years after the date of the alleged bond, and his pretended purchase of the same, and long after he could have procured a deed from Jones himself, had he been entitled to it; that he commenced his proceedings in the probate court, one of limited jurisdiction, and of but little publicity, when the law required that it should have been in the District Court; that the representatives of the estate of Richard Sparks were not, and could not be made parties in that court; that his petition was so fatally defective that the administrator, the next day after he qualified, accepted service of the petition, and failed to put Smith upon his proof, but let judgment go by default; that the same attorneys represented both the administrator and also Smith; that the probate judge took such an active interest in the matter, that he found Smith to be the legal owner of the bond when Smith had nowhere alleged such fact, and when the subsequent part of the decree showed that in truth no testimony whatever had been offered on this point; as the court not only utterly failed to preserve any evidence of the facts upon which it acted, and to cancel the alleged bond, as required by statute, but referred the whole matter to the clerk, in vacation; that the administrator exercised no discretion or judgment whatever of his own, but acted as the mere instrument of other parties—these facts, we say, are certainly sufficient to stamp the whole proceedings as void, for fraud in law, if not in fact.

If a judgment, in the language of the Supreme Court, is infected with fraud, it can be inquired into whenever it is sought in any suit to make it the basis of a recovery, and the defendant to that suit can set up this fraud to defeat the recovery; and his defense is to all intents and purposes, especially in our blended system, a suit to set aside the former judgment. This being set up collaterally, can be impeached collaterally. Particularly is this the case, where the parties to the suit then pending,

were strangers to the former proceedings and judgment; and more especially in an action of trespass to try title, where the pleadings, as in this case, are general. The defendant is not advised until the introduction of the testimony that the judgment will be relied upon, and he can then show the fraud and consequent nullity of the judgment. He, as insisted upon by learned counsel on the trial below, will not be deprived of this right until the institution of an independent suit to set aside the former judgment, when his rights will have been already barred by the suit of which the fraudulent judgment was the basis.

It will be remembered in this connection, that the fraud was affirmatively shown by the testimony introduced by the plaintiffs below.

*Eleventh.* The eleventh objection taken in said bill of exceptions, was that said pretended decree or judgment of the probate court had never been recorded in the county in which said land is situated, or elsewhere, as is expressly required by statute in such case made and provided.

The whole policy of our laws is against secret liens and titles, and numerous decisions can be found in which the rights of *bona fide* purchasers, without notice, where the adverse title has not been recorded, are protected. But independently of the general registry laws in such cases, our statutes on this subject prescribe a rule of evidence, and peremptorily require that judgments affecting the title to land shall be duly recorded in the county clerk's office of the county in which said land is situated, and until so recorded, " shall not be received in evi-" dence in support of any right claimed by virtue thereof." (Pas. Dig., Articles 5006, 4710, and 5023.)

2. Bill of exceptions No. 3 was taken to the introduction in evidence of the deed of said Morrison, as administrator of Jones, to Erastus Smith, made by virtue of said order of the probate court of Nacogdoches county.

*First.* The first objection taken in said bill of exceptions, was that no sufficient predicate had been shown to authorize said deed.

Without a proper decree, the deed is of no binding force or effect.

It is not necessary that an administrator's deed should recite the proceedings or decree at length, nor is such recital evidence of the facts recited, except as between the parties and privies. The judgment or decree authorizing the conveyance, must be produced. (Jones v. Taylor, 7 Texas R., 240.)

The judgment of the probate court being a nullity, as before shown, the deed from the administrator, based upon it, is also a nullity, and cannot sustain the title of plaintiffs, and hence was improperly admitted in evidence.

*Second.* The second objection taken in said bill of exceptions was, that the recitals in said deed were not evidence in this case against these defendants.

The defendants were neither parties nor privies to said proceedings, were in no wise connected with the estate of Jones, and were not bound by said recitals. (McCoy v. Crawford, 9 Texas R., 353; Jones v. Taylor, 7 Texas R., 242, and numerous authorities there cited.)

*Third.* The third objection taken in said bill of exceptions was that the original deed, a copy of which was read in evidence, had never been recorded in the county in which said land was situated, nor in Robertson or Freestone counties, from which the same was taken. Freestone county was a part of the original county of Robertson. (Pas. Dig., Article 395; Act Dec. 14, 1837.)

By our statute, conveyances shall take effect, as to subsequent purchasers without notice, from the time they are delivered to the clerk for record, " and from that time only." (Pas. Dig., Article 4994.)

Though registration be held not to be requisite to the validity of the deed as between the parties thereto, yet in this case, as to these defendants, and under their defense of *bona fide* purchase for a valuable consideration without notice, there being no evidence of notice, it became essential to give effect to said deed that the same should have been recorded in the proper

county. As there was neither registry nor possession by plaintiffs, the burden of proof was on them.

Again, as there was no proof of the execution of the deed as at common law, registry in the proper county became absolutely essential to lay the predicate for its introduction in evidence under the statute. (Pas. Dig., Article 3716.)

*Fourth.* The fourth objection taken in said bill of exceptions was that said deed could not affect the community interest of Mrs. Sparks.

The attention of the court has already been called to this question, and it need not again be presented.

3. Bill of exceptions No. 1 was taken to the introduction in evidence of the proceedings of the probate court of Nacogdoches county, in the matter of the application of Erastus Smith, to cause the administratrix of Richard Sparks to deliver to him said alleged bond from Jones to Sparks.

Several of the objections raised in this bill of exceptions are substantially the same as those previously considered.

Said testimony could not have been offered for any other purpose than to prove title in said Smith to said land, and for this it was clearly inadmissible. It will certainly not be contended that the probate court had jurisdiction to adjudicate the question of the right and title of parties to property. It had no authority to empannel a jury even. It is presumed, however, that said transfer and bond were not delivered to him on his application, for he failed to file them with the clerk, in the proceeding in the estate of Jones; both the transcript from the Nacogdoches probate court and the testimony of Morrison, the administrator, showing this failure. This presumption is strengthened by the fact developed on the trial below, that the defendant John M. Sparks, as late as 1855, obtained said alleged bond from the estate of Richard Sparks, by leaving a certified copy of the same.

Counsel for appellees states in his brief that there were a power of attorney and receipt from Richard Sparks to Smith, but there was no evidence whatever of the existence of the same,

except the bare recitals in the application of Smith to the probate court. These recitals were no evidence against appellants, even if the court had jurisdiction, they being neither parties nor privies.

Again, said recitals were the mere declarations of the party in interest in his own favor, and no evidence of the existence of said alleged papers; and any presumption which might by possibility arise from said recitals, is wholly rebutted by plaintiff's failure to produce the originals on the trial, to make affidavit of their loss, or to introduce any legal testimony whatever, to show that said papers ever had an existence.

4. Bill of exceptions No. 4 states the objections to the introduction in evidence of the transcript of the probate court of Nacogdoches county of the partition and distribution of the estate of Richard Sparks. Without waiving any of the points presented in said bill of exceptions, we say that said partition was not a full, complete, and final partition of said estate except as to the four oldest heirs—and only a partial partition as to the three youngest heirs, to wit: Andrew J., Thomas B., and John M. Sparks. That besides the claim to this league of land, there were quite a number of other claims to land, which at the time of that partition had not been proven up, or about which there was some difficulty; all these claims it was verbally agreed and understood should be the property of the three youngest boys above named. All of which is fully explained in the motion and affidavit for new trial, and which is also corroborated by the expression in the transfer of A. J. and T. B. Sparks to Thorn and Allen of two-thirds of all of the remaining portion of said estate, after said partition and distribution.

But if said partition had been all regular and altogether unobjectionable, still it was irrelevant and not competent, at least as to those of the defendants who are innocent purchasers without notice. And as soon as John M. Sparks became of age, he took the necessary steps to protect the interest of the three youngest boys in this land, by proving up the deed and having it recorded, and took actual possession in 1856, and has held possession ever since. As an admission it is altogether negative in

its character and is of no value; it was not an inducement, or motive of any action whatever on the part of appellees; they were in no wise deceived or led astray thereby, or in any other wise injured, and were not in any manner parties or privies thereto, and hence have no right to plead the same as an estoppel. (Burleson *v.* Burleson, 28 Texas, 385.)

It would seem that if an inventory, which is required by the law to designate the separate property, etc., and must be sworn to, be not held an estoppel, then certainly such a partition cannot be so held.    (Paschal, Article 1299 ; Dunham *v.* Chatham, 21 Texas, 248.)

II.    The third error assigned is that the court erred in rendering judgment for plaintiffs under the pleadings, evidence, and law of the case.

Having shown, as we trust, to the satisfaction of the court, that the plaintiffs failed by competent and satisfactory evidence to deraign their title either from Richard Sparks or the estate of Jones, we might rest the argument here ; but it is respectfully submitted that, under the pleadings, evidence, and law of the case, judgment should have been rendered for the defendants on their title.    As will be seen, upon an inspection of the record, defendants claim under a regular chain of title, from and under the sovereignty of the soil.    As to the interest derived through A. J. Sparks and Thomas B. Sparks, they were *bona fide* purchasers for a valuable consideration without notice. That such purchasers will be protected is a universal and familiar principle of equity.    (Sydnor *v.* Roberts, 13 Texas R., 622.)

This protection extends to purchasers at sheriffs' sales. (Ayres *v.* Duprey, 27 Texas R., 593; Pain *v.* Moreland, 15 Ohio, 435–443.)

It will not be seriously contended that the defendant Bradley, claiming under the sheriff's deed, did not prove payment of the purchase-money.    In the agreed facts, it is admitted that the judgments and executions under which he purchased " were valid and correct, and the executions returned with the " proper credits thereon indorsed."    This return was of course

made under the official oath of the sheriff, was binding on the plaintiffs in execution, became a part of the records of the court, and was full proof of the facts therein stated.

The chain of title under which plaintiffs claim was never recorded anywhere, and hence there was no constructive notice of the same, and no actual notice was attempted to be brought, nor in fact could be brought to the knowledge of defendants. There was no actual possession by plaintiffs. Defendants, on the contrary, through their tenants, had been in the actual possession of the land, under their said chain of title, since the 30th of December, 1856.

Hence, in addition to their paper title, they were protected by the statute of limitations in such cases made and provided. (Paschal's Digest, Article 4622.)

Counsel for appellees contend that the statute of limitations was suspended by a former suit in the United States Court at this place. We are relieved of the discussion of the effect of such former suit under our statute in any other than in a State court, by the fact that there is a total failure in the record to show any sufficient evidence of the institution and precedency of any former suit, which would interrupt the running of the statute. There is no evidence whatever when said suit was instituted, or when it was determined, how long it continued,— whether a day or a month,—or how determined, or that any verdict and judgment was had in the same, which is positively required by statute, and has been expressly held by this court to be necessary to suspend the statute. (Hughes v. Lane, 25 Texas, 356.)

It is evident then, both from the weakness of appellees' title and the strength of appellants' title, that the judgment of the court below should have been in favor of appellants, and as a jury was waived and all the facts are now before this court, and no other matter of fact remains to be ascertained, it is respectfully asked that said judgment be reversed, and that this court now render such judgment as should have been rendered by the court below

*T. J. Word,* and *A. M. Jackson,* for the appellees. This is a suit of trespass to try title, in the ordinary form. It is a second suit, the first having been tried in the U. S. District Court; and the second suit, now under consideration, was brought in the District Court of Freestone county, where the land is situated, and venue changed to Anderson county, where the case was tried at the December term, 1870, before the judge, the parties waiving a jury. Judgment was rendered in favor of the plaintiffs (now appellees), from which an appeal is prosecuted to this court, to reverse the judgment, and grant a new trial, that being refused below.

A league of land was granted by Geo. A. Nixon, commissioner, to Wiley M. C. Jones, in Burnett's District, in the year 1835, and in the same year he sold, and gave a bond for title to Richard Sparks. In the year 1837, Sparks sold to Erastus Smith, the husband of one of the appellees, and father of the other; and Smith gave him a power of attorney to act for him, in procuring a deed from Jones, for the land. He also delivered to Sparks the bond of Jones, and the *testimonio* (or title) issued to Jones by Nixon, and took Sparks' receipt for the same, and his obligation to procure a deed from Jones for the land. Shortly after this, and before the deed was made, Sparks and Jones both died. Mrs. Sparks administered on the estate of Richard Sparks, and returned the bond which Jones had given to make title to the land, as assets of Sparks' estate, in her inventory. In order to get these papers out of her hands, as administratrix, Erastus Smith commenced proceedings in the County Court of Nacogdoches County, August term, 1844, against Mrs. Sparks; and at the September term, 1844, the court ordered her to deliver up these papers to Smith.

John C. Morrison, at the January term of the County Court of Nacogdoches, 1845, obtained letters of administration on the estate of Wiley M. C. Jones, and at the same term of the court, Erastus Smith commenced proceedings against Morrison, as administrator of said Jones, to procure a deed from him, as such administrator, for the said league of land; and an order was

made by said court directing Morrison, as such administrator, to make the deed, and in pursuance of said order, Morrison executed a deed to Smith for the land. Thus the title of Smith, the husband and ancestor of appellees, to the land in question, is made out. Both parties claim under Jones, and there is no controversy about the original title.

The appellants claim title to the land in controversy through John S. Thorn, who had purchased an interest in Richard Sparks' estate. Thorn's interest in said estate and land being sold under execution against him; and also they claim further interest, by purchase from A. J. and Thos. B. Sparks. This is believed to be a proper statement of the titles of both parties.

In order to show that the estate of Richard Sparks had no interest in the lands, and to sustain the title for appellees, we would call attention to the order of the court of Nacogdoches, distributing the estate of Richard Sparks amongst his heirs. And in this distribution, it will be seen that the land in controversy is not included. And, in fact, after the order of the court directing Mrs. Sparks to deliver up the bond of Jones to Smith, the administratrix of Richard Sparks exercised no further control over said land; and although she had returned it in her inventory, she claimed no further interest in it, after that order. Under this order, the bond was filed in the court, and some ten years afterwards, to wit, at the August term of the county court of Nacogdoches county, 1855, John M. Sparks applied to the court, and obtained an order to withdraw from the papers the bond made by W. M. C. Jones to his father Richard Sparks, by leaving a copy. It is believed that this bond had been indorsed and assigned by Richard Sparks to Erastus Smith, and is the bond referred to in the proceedings.

It is respectfully submitted, that Richard Sparks' estate had no title, interest, or claim, to this land whatever; that in 1837, Richard Sparks transferred all his title and interest in this land to Erastus Smith, and had given him a receipt for the evidences of title executed by Jones, and also had given his obliga-

tion to Smith *to procure a title* from Jones to Smith—*not an obligation to make a title himself:* for if he had given a bond to *make* a title himself, then the proceedings in the County Court would have been against Mrs. Sparks, the administratrix, to *make* title, and not to *deliver* the bond of Jones for title. (See Paschal's Digest, Article 1313.) And this was the law, or a law similar to it, under which the court ordered Morrison, administrator of Jones, to make title to the land above referred to.

All the testimony in this case is record testimony. No oral testimony was offered. The parties waived a jury, and submitted the case to the presiding judge, who gave judgment for the plaintiffs below, appellees here. A motion for a new trial was made, and an affidavit was made by J. C. Walker, in support of the motion, but not accompanied by the witnesses' affidavit, stating the facts, and the motion for a new trial was overruled, and appeal prosecuted.

The errors assigned and raised by the bills of exception are as to the rulings of the court in admitting the orders and records of the county court of Nacogdoches county, as evidence on the part of the plaintiffs below, appellees here. These records all related to the same subject matter, the land in controversy in this case; these records were all properly certified by the clerk of the court, the custodian of the records; the proceedings in that court were had between parties claiming interest in the land, or papers relating to the land in controversy; and it is believed, and we insist, that no error was committed in admitting these records in evidence. And first, as to the proceedings against Mrs. Sparks, as administratrix of the estate of Richard Sparks, for the bond of W. M.·C. Jones for title, it is contended by appellants that they were not parties to that proceeding, and that the record should not have been read against them. Were they not parties, in fact, in a proceeding against the administratrix of the estate which they claim? She represented all the interest the estate had in the papers, and the appellants claim no other interest. The property vests in the

administratrix for the creditors and heirs (Paschal, Article 1373), and she was the only party necessary to the suit. The appellants and all others interested in the estate, were in court by the administratrix. (See 16 Texas, Shannon v. Taylor, pages 413, 414, and 416.) This case is decisive on this point. But it is objected by appellants, to the reading of these transcripts from the County Court. The objection is not tenable. They are the records of the County Court. They are the transcripts of suits and proceedings had in that court, in relation to the land in controversy, between parties claiming interest in the land; they are certified properly, by the clerk of the County Court, the keeper of the records, and are admissible as evidence. (Paschal, Article 3715.) And see the agreed facts, signed by counsel, which waives notice and filing of deeds, *transcripts*, and records.

But appellants object further, that the County Court had no jurisdiction over the case of Erastus Smith v. Mrs. Sparks, to recover the papers, the bond of Jones, and insist that the District Court was the proper tribunal, and they rely on Article 1071 of Hartley's Digest (found page 316 Paschal's Digest), and which is the fourth section of the Act of 1844. And it will be further observed that this law (fourth section, Act 2d, Feb., 1844), applied to cases only when bonds for title were given by parties who died without complying with the bond; in which event the holder of the bond should bring suit in the District Court, to compel the executor, or administrator, to *make title*. The suit of Smith v. Mrs. Sparks was not for *title*, but to compel the *surrender* of a bond, made by Jones to make title. Hence the proceedings were in no wise affected by that law; the proceedings were proper. And so with all the objections raised to the introduction of the various records from the County Court of Nacogdoches. The proceedings of which these records are transcripts were had under the laws of the Republic of 1836–'7, and laws in force up to 1845, and not under the laws referred to by appellants. And although some of these laws are not contained in Paschal, they having been repealed, they may be found in Hartley.

The law on which appellants rely, to show that the County Court of Nacogdoches had no jurisdiction to grant letters on the estate of Jones, is Article 1030, Hartley's Digest. This law was passed Feb. 1840 (See Hartley, Article 995), and it is believed the grant is in perfect accordance with the law. The petition states that W. M. C. Jones, *late of said county, departed this life intestate.* No fair construction of this language can mean anything but that Jones was a resident citizen of Nacogdoches county. And it will be recollected that these proceedings took place over twenty-five years ago, and much will be presumed in favor of the validity of decrees and orders of the probate court, in relation to estates, of so long standing ; and the proceedings of these courts are not conducted with the strict pleading that prevails in the District Court. (See 23 Texas, Langley *v.* Harris, pages 564, 568, and 569.) And after a lapse of so great a time, it will be presumed that the administration of Jones' estate was regularly granted, conducted, and closed. (See 23 Texas, 489, 494, Wardrup *v.* Jones. See also Poor *v.* Boyce, 12 Texas, 440.) The petition gives the probate court jurisdiction. See also 15 Texas, 557, Dancy *v.* Stricklinge : " Some sanctity should be given to judicial proceed- " ings ; some limit beyond which they should not be ques- " tioned," etc.

And as to the record showing a partition of the estate of Richard Sparks amongst his heirs, it will be seen that this transcript is regularly and correctly certified by the clerk of the County Court of Nacogdoches county, the custodian of the records ; and the authorities above referred to show that it was properly admitted as evidence. (Paschal's Digest, Article 3715, and also see agreement, pages 32, 33, Transcript, that these papers might be read.) And can it be contended that John M. Sparks acquired any title or interest in this land by the withdrawal of the bond of Jones to his father, Richard Sparks, ten years after it had been surrendered by his mother, the administratrix of his father's estate ? This is the bond his father had transferred to Smith, and had obligated himself to procure title from Jones on

this bond. This is the only title he pretends to have to the land. The bond had been surrendered ten years before. The estate of Richard Sparks had been distributed, and *no* mention made of this land. This bond was improperly withdrawn from the records, and an improper use made of it, and John M. Sparks falsely represented himself *as a forced heir*, in his petition to withdraw said bond; for there could be no forced heirs where there was no last will and testament. And the distribution of Richard Sparks' estate amongst the heirs, made a matter of record, precludes all the heirs from setting up title to this land, it not being mentioned in said partition. (See 22 Texas, 686, Debrell *v.* Ponton.) The administration of Richard Sparks' estate was closed in the year 1851, and the administratrix discharged. And although the same witness, Hunt, says he finds no transfer of the bond of Jones, that may be true, and yet the bond may have been transferred by indorsement on the back; and as John M. Sparks had withdrawn the bond before the date of this deposition, the indorsement on the bond went with the bond, and the copy of the bond left in the office of the clerk did not show that fact. And as these proceedings notified John M. Sparks that he was expected to produce the bond with its indorsements, he should have produced it without notice to do so. (1st Greenleaf on Evidence, Section 561; and 15 Texas, 299, Dean *v.* Borden.)

But appellants insist that this land was community property. Well, admit it to have been community property, and that Mrs. Sparks was entitled to one-half of it while it remained unsold, yet Richard Sparks sold it to Erastus Smith in 1837, and bound himself to procure the title from Jones. He had the right to sell during the life of his wife and himself (See Paschal's Digest, Article 4642), and all the land and all title and interest therein passed to Smith by the sale of 1837. Sparks died in 1838.

But the appellants earnestly urge that the County Court of Nacogdoches county had no jurisdiction to grant letters of administration on the estate of W. M. C. Jones to John C. Mor-

rison, in 1845.   We have before referred to this subject, but we deem it proper to again refer to the matter, as appellants refer to some other authorities.   It will be seen, from an examination of the case of George *v.* Watson, 19 Texas, 354, that the petition for letters represented no residence of the deceased George, but represented that George, "late of the county of Lamar," had land in the county of Red River, where application for letters was made; and the court decide that the words, "*late of La-*"*mar,*" did not oust the County Court of Red River of *juris-diction to grant letters,* and that the judgment of the County Court, ordering the land to be sold, and confirming the sale, could not be attacked in this collateral manner.   We insist that this authority fully sustains the position we take; and all the proceedings had in this County Court of Nacogdoches show the residence and home of Jones, deceased, to have been in Nacog-doches.   The judgment cannot be attacked in this collateral proceeding.

The other authority, 9 Texas, 109, Munson *v.* Newson, arises under the Act of 1848.   The letters were granted on Jones' estate in 1845.   It is submitted that this case cannot affect the case under consideration; but if this law were applicable, it does not militate against the position we have taken.

*George F. Moore,* for the appellees, moved to so reform the judgment of this court as to remand the case, supporting his argument as follows:

In support of the motion to reform the judgment in this case, we do not propose to controvert any of the legal propositions announced in the opinion of the court, or to dispute their applicability to the facts of this case, as they appear in the present record.   We merely urge the erroneous ruling of the court below; that the record of the County Court of Nacogdoches county and the proceedings had therein in the administration of the estates of Sparks and Jones, and the deed by the administrator of the latter, was sufficient evidence of title in the plaintiffs below to support their action, prevented or occasioned the with-

holding of a large amount of cumulative facts and circumstances, as well as independent evidence, which could have been adduced, and which, without the aid of these records and deeds, is amply sufficient to entitle the plaintiffs below to a judgment for the land. We only ask, therefore, that the case be remanded to the District Court, to be proceeded with in accordance with the opinion of the court delivered therein.

The court ordered the case to be dismissed upon the supposition, no doubt, that the record presented all the evidence of title upon which the plaintiffs below relied, without adverting to the fact (amid the pressure of business forced upon it by an accumulated docket) that the ruling of the court below rendered the presentation of other evidence not only unnecessary, but also an unnecessary, if not an improper and discourteous, consumption of its time. There seems, however, to be an impression on the minds of some of the profession that, when a jury has been waived in the court below, if the judgment is reversed, this court should give a final judgment for the appellant or plaintiff in error. Certainly nothing is farther from the correct rule or the practice of the court, than such a conclusion. When a jury has been waived, and the case has been submitted to the court below upon all the facts upon which the parties respectively rely, if the case is brought to this court, the only question for its consideration is the judgment which should be rendered upon these facts; and, of course, if the court below has erred in the judgment which should have been rendered, this court will correct such error by rendering the proper judgment. But if facts upon which the parties rely have been excluded by the rulings of the court, or the submission of the facts has been in any manner modified or affected by any improper ruling of the court below, as this court cannot say upon what facts the case would have turned, but for error in excluding or admitting evidence, the case in this court being revised for such error, this court no more than the court below, has the facts of the case properly before it, so as to give such a judgment as should be rendered upon them. If this court, because a jury has been

waived, is to give a final judgment, not on an agreed state of facts, or all the facts upon which the parties rely, or all upon which they may wish to rely, but merely upon such a presentation of the case as the erroneous rulings of the court below has occasioned, it will, when understood to be the practice, put an end to the submission of causes to the court, or result in the consumption of the time of the court, and encumbering the record with every different phase of the case, and all possible cumulative testimony, notwithstanding repeated rulings of the court below that it was unnecessary. For otherwise, the submission of a cause to the court would be simply a trap for the unwary.

As we have said, we have no idea that the court intended, by its judgment in this case, to give its sanction to such a practice, but was induced to render a final judgment upon the hasty supposition that all the evidence upon which the plaintiffs in the court below relied to support their title, was set out in the record; and, if so, in view of the law of the case as taken by this court, no good could result from its being remanded to the District Court. Having the strongest moral conviction, from the knowledge which we have of the facts and circumstances connected with the matters involved in this litigation (from the writer's former connection with it as counsel), that the appellees are morally, legally, and equitably entitled to the land for which they sue, the question presented is to them of the last importance. We have therefore examined, we believe, every case to be found in the last five or six volumes of our Reports, while the court was presided over and enlightened by the learning and judicial discrimination of one of the three great jurists who, in the main, molded our practice, and laid the foundation of our legal structure, in which a jury was waived, and when the judgment was reversed by this court; and, at the risk of being tedious, we ask to call the attention of the court to each one of them. Without exception, we believe, they will be found to sustain and uphold the position for which we are contending.

Cooper v. Marchbanks (22 Texas, 1) was a case of forcible

16

entry and detainer, commenced in the justice's court, and carried by *certiorari* to the District Court. The judgment of the District Court was reversed, and the cause dismissed because the original complaint did not show that the complainant was entitled to the premises.

Storey *v.* Nichols (22 Texas, 87). Suit on note. Answer, general denial. Answer withdrawn, and judgment by the court; which was reversed, because not warranted by the legal effect of the facts stated in the petition, and such judgment given as should have been rendered.

Wells *v.* Mills (22 Texas, 302), the County Court, sitting for the transaction of business of estates, refused to confirm a sale of land made by the administrator. The District Court reversed the judgment of the County Court. There was no dispute about the facts. This court reversed the judgment of the District Court, and dismissed the case, because the matter was intrusted to the discretion of the chief justice.

In Carey *v.* Tinsley (22 Texas, 383), a jury was waived, and the only question was, as to the construction and legal effect to be given to the facts; yet, the judgment being reversed, the cause was remanded, because there was some uncertainty in one of the items of evidence, about which no question seems to have been made in the court below.

In Mitchell *v.* Burdett (22 Texas, 633), a jury was waived, and there was no question, except as to the judgment on the facts, submitted; yet, the judgment being reversed, the court held that the cause must be remanded, that proof might be supplied if it could be done, which may not have been offered, because it was thought by the court below to be immaterial. This case seems to us to be directly in point, and conclusive.

Bennett *v.* Dowling (22 Texas, 660), jury was waived. The judgment was reversed, as in the present case, for error in admitting testimony, and the cause remanded.

In Henderson *v.* Ayers (23 Texas, 96), there was no question as to the admissibility of testimony, and all the testimony which was deemed necessary by the parties was submitted to

the court. This court say, a jury having been waived, it might proceed to render judgment; but, as the judgment was reversed for want of testimony which had not been regarded as necessary in the District Court, the cause was remanded.

White v. Sabariago (23 Texas, 243). The judgment was reversed for error in overruling the demurrer; and though a jury had been waived, and the facts all submitted to the court, the cause was remanded, and this, too, when the petition showed that the plaintiffs were aliens, and could not maintain the suit.

It seems to be the uniform and invariable practice, though a jury has been waived, and the facts submitted to the court, if the judgment is reversed for error in overruling exceptions. to remand the cause. (Punchard v. Taylor, 23 Texas, 421; Holloway v. Memphis, El Paso and Pacific Railroad Company, 23 Texas, 465; Baxter v. Farr, 24 Texas, 17; Phillio v. Holliday, 24 Texas, 38; Hunt v. White, 24 Texas, 643.)

In Perkins v. Sterne (23 Texas, 561), the plaintiff failed to incorporate the mortgage, to secure the notes sued on, in the record; yet, on a reversal, the cause was remanded.

Keenan v. Perry (24 Texas, 254). The judgment was reversed and rendered; but it is quite apparent, from the report of the case, the only question was, as to the proper judgment to be given upon an undisputed " state of facts."

In Stillman v. Canales (25 Texas, 313), a jury was waived, and the cause tried by the judge, and no exception seems to have been taken, except to the judgment on the facts; yet this court remanded the cause.

In Duren v. Presbury (25 Texas, 512), the judgment was reversed and rendered; but the statement of the case by the reporter (of counsel in it, and the writer hereof), as well as the brief of the counsel, show that the only question in the court below, or in this court, was as to the construction of plaintiff's grant fixing his beginning corner.

White v. Casey (25 Texas, 552). The judgment was reversed for insufficiency of the *certiorari* by which it was brought to

the District Court: there being, therefore, no foundation for the action, it was properly dismissed.

In Ross v. Armstrong (25 Sup. Texas, 355), "a jury was "waived, and the law and facts submitted to the court, who dis- "missed the petition." And though the only issue before the court was on the facts, the judgment was reversed and the cause remanded.

In Austin v. Earl (25 Sup. Texas, 403), the only question was to the judgment to be given on the facts submitted; still, when the case was reversed, it was remanded, that the party against whom the judgment had been rendered might present additional evidence.

In Kelly v. Medlin (26 Texas, 48), also, the only question before the court was the judgment to be given on the evidence submitted. This court reversed the judgment, and sent the case back for a new trial, evidently that the deficiency of defendant's testimony in support of his title might be supplied, if this could be done. And this, although there was no pretense that any testimony had been omitted through accident or mistake. Nor was there an intimation to the court that any additional testimony could be adduced. This, too, in a case in which the only defense relied upon was limitation under a tax title. Certainly not a defense in aid of which the court would feel inclined to stretch its rule of practice.

In Harrell v. De Normandie (26 Texas, 120), the judgment was reversed, and rendered by the court; but the defendant, in his answer, substantially admitted the facts stated in plaintiff's petition, denying merely the legal conclusions and deductions from them, as alleged and charged in the petition.

In Rose v. Newman (26 Texas, 131), which was a suit for title and partition of land, the judgment was reversed because the evidence was insufficient to sustain the decree; yet, although a jury had been waived, the cause was remanded for a new trial.

We submit that this unbroken current of decisions clearly maintains the rule of practice for which we are contending, viz.: When there is any reason to suppose that, either through acci-

dent or mistake, all the facts have not been presented, so that the court can pass upon and decide the case according to its true merits, it will so deal with it that the parties may have an opportunity of presenting the other matters of fact which should, in the judgment of the court, be ascertained before a final judgment or decree should be rendered. Most certainly is this the rule when the submission of the facts has been in any way modified or influenced by any improper or erroneous ruling of the court below. No citizen shall be deprived of rights or property, except by due course of law. Due course of law secures to every litigant the right of presenting to the consideration of the court all the evidence pertinent to the issues in his case, before a final decision is pronounced against him. Certainly he has been deprived of this privilege, if this court renders a final judgment against him, without his having the opportunity of offering all of his testimony in support of his title, by reason of the erroneous rulings of the District Court, no matter whether such erroneous rulings have been in his favor, or against him.

To show that the court has not materially modified its former practice we cite a few other cases from the later reports.

Thompson v. Eanes (32 Texas, 190). A jury was waived, and the cause, on the law and facts, was submitted to the court, who held that the exceptions to the petition were properly sustained; yet, had not the plaintiff conceded that the judgment for the defendant was rendered as well on the facts as the law, and that he did not desire to amend his petition, the court would have reversed the case, and remanded it; but there being no error in the facts, and plaintiff not wishing to amend, the judgment was affirmed.

Cook v. Love (33 Texas, 487). The only question was the judgment to be rendered on the facts. The court says, " We " must therefore reverse the judgment below, and, inasmuch as " a jury was waived below, and the case tried on an agreed " state of facts, we proceed to render judgment for appellant."

So, likewise, in McDonald v. Moore (34 Texas, 384), the

only question before the court was the judgment to be given on the facts.

Confident in the overwhelming weight of the facts, outside of those which appear in the present record, we have not deemed it necessary to ask the court to grant us a reargument, or even to modify the caustic comments contained in the opinion on the records of the probate court, which were admitted in evidence by the District Court. Nor will we even urge that these records—with one, if no more, of the most important papers connected with this transaction destroyed, lost, or spirited from among the papers of the court; and without the aid of explanatory testimony which might have been offered, but which the court below deemed unnecessary; in connection with the able and ingenious argument of the appellant, who has not hesitated to charge the judgment of the probate court as "infected with fraud"—may not justify the conclusion of the court, of its insufficiency as evidence of title, and called for the disparaging reflections contained in the opinion upon all the parties connected with these proceedings in the probate court. We beg to say, however, in extenuation, though it may not justify the confidence with which these records were regarded as evidence of title by the court below, that they came before the court many years subsequent to the judicial action of the probate court on the matter in question. They were the records of an inferior court, whose course of proceeding and practice was neither very uniform, nor well established and clearly defined by statute or general usage. All the parties connected with these proceedings, with the exception of Morrison, the administrator, had passed beyond the call of earthly tribunals. The era through which the country had passed had not been favorable to the preservation of the public records. The papers of this court had been subject to destruction by the torch, as well as by time. It is an historical fact, within judicial knowledge, that the office in which these papers were kept had been twice destroyed by fire, and that many of its records and papers had been destroyed or lost in the haste and confusion of

their removal from the midst of the flames.　Interested motives; may have tempted their destruction.　We mean no reflection upon any of the parties connected with this suit, than whom we regard none as more honorable, be they who they may, or wherever to be found, or whatever position they may occupy. But the identity of name of one of the parties who prompted a portion of Sparks' heirs to assert a claim to this land, and who for a time had access to the papers of this office, with one subsequently found occupying a prominent position on the criminal docket of the District Court of this county, in connection with the frauds and forgeries on the General Land Office, just after this same party had been for a short time a clerk in said office, might give pause to reflection, and justify suspicion, with as good reason as can the appellant claim as authorizing a charge of fraud in said proceedings in the probate court.

But, as the opinion of the court seems to lend countenance and force to the charge of fraud which is made by the appellants, we ask the indulgence of the court to inquire how and by whom has said record been "infected with fraud?" Smith, in whose behalf said proceedings were instituted, was a non resident; seems not to have been present, and had no direct or personal connection with the matter.　The administrator, it is implied, if not directly charged, was a mere pliant tool in the hands of Smith's attorney and the probate judge.　There is no conceivable motive why the judge should have infected the record with fraud, unless induced or influenced to do so by the attorney.　If, then, the judgment, as appellant directly charges, and as the court seemingly imply, is "infected with fraud," it must have been so infected by Smith's attorney.　This court was not called upon to do so, and, we are therefore sure, it did not pause in its examination of the record to observe who was the counsel by whom these proceedings were conducted in the probate court.　Who was this attorney?　A pettifogging, shyster, who hangs around the purlieus of the courts, the willing instrument of villainy and corruption, who taints with his own infamy whatever he is connected with, that we should be

ready to infer fraud in these proceedings, after the long lapse of time since they were had, because of seemingly slight irregularities in them, or even an evident erroneous exercise of judicial authority? The history of Texas, in its every page, from its natal day until his untimely death, answers the question. Thomas J. Rusk was the attorney by whom these proceedings were instituted and conducted—a soldier, in whose presence Gen. Houston, on the celebration of the independence of Texas, declined to accept the toast, "To the Hero of San Jacinto," as a compliment to himself; a statesman, than whom none are more prominent in the annals of Texas—filling, with equal credit to himself and usefulness to the people, the most eminent positions in the camp, the cabinet, and the legislature, and would have been made president of the republic, but that he declined it; a lawyer, the leader of the most prominent. From among the host of able jurists, distinguished alike for their eloquence and learning, who then adorned the Texas bar, and who, if equaled, have never been surpassed by their successors in the brilliant qualities which adorn the forum, or those of solid worth which give usefulness to the bench, he was selected as the first Chief Justice, to enlighten with his learning and grace with his dignity the Supreme Court of the Republic. A senator in the Congress of the United States, the compeer in debate with the foremost—in life loved and respected for his purity of character and personal worth; in death mourned as a statesman, patriot, and friend, by the greatest and most distinguished members of that most august body, in the days of its pristine purity and fame. A man who, from the day he entered the province of Texas, a young adventurer, until his sad and untimely death, while a senator of the United States, with a reputation not limited to his own country, tried in all the exigencies of a varied and eventful life, alike in public stations and private affairs, and found wanting in none; against whom neither party rancor nor private enmity had ever occasioned the slightest suspicion of fraud or corruption in official business or individual transactions, and against whose pure

name not even the tainted breath of scandal and slander ever dared to breathe a stain. If this is to be done above his grave, we trust this court will not give it force by its sanction.

If we have expressed ourselves, in these brief remarks, with warmth, we trust we have not done so with intemperance. Certainly nothing could be more foreign to our intention. Much less would we be understood to intend any discourteous reflection on any matter contained in the opinion of the court, or in the brief of counsel, upon which we have commented. The court, as we have already said, did not know by whom the business in the probate court was conducted, intended no individual application of the reflections in the opinion, and were influenced by the unfavorable impressions induced by a mutilated and imperfect record. And the remarks of counsel are to be attributed to the unguarded warmth and zeal of advocacy. Although we were counsel for the appellees years ago in this case, we did not participate in the trial of the cause in the court below, or in this court, and were not present when it was argued or decided here. We were not, therefore, aware of the phase of the controversy upon which we have commented until the present occasion. Addressing ourselves to the court now, for the first time, we have felt that we could not, in justice to the court or ourselves, say less than we have said. Although too far separated in years and public station from the distinguished subject of these remarks, when we were honored with his acquaintance, to claim him as a personal friend, still we can but remember, when only a youthful tyro in the profession, the many acts of courtesy and kindness which he, then in the zenith of his fame, was so obliging as to manifest to us. We have felt constrained, also, to speak in behalf of the memory of the best beloved of all that noble host of heroes who gave Texas a name and place among the nations of the earth; of the spotless professional integrity of the first Chief Justice of the Supreme Court of the Republic of Texas, in whose unsullied reputation this court, the bar, and the people of the State have a common heritage and interest.

*J. C. Walker* and *Bonner & Bonner*, for the appellants, filed an able reply, based on the facts of the case; and the motion was not granted.

WALKER, J. This was an action brought in the District Court of Freestone county, to try the title to the lands described in the petition. For some cause or other the venue was changed to Anderson county, and at the December term, 1870, a jury being waived, the case was tried to the court, and resulted in a judgment in favor of the appellees.

The errors assigned for a reversal of the judgment are found in the several bills of exception taken on the trial. Intending to abridge this opinion as much as possible, we may here remark that in our opinion every exception is well taken. The very learned and able briefs filed in this case, with the accompanying arguments, discuss all the questions involved with consummate ability, and as they will be published with a report of the case, there is little need of our making citation of numerous authorities in support of our opinion.

Both parties deraign title from Wiley M. C. Jones, to whom a league of land was granted in Burnett's District, in the year 1835.

On the 9th day of July Jones sold his interest in the land to Richard Sparks, conveying the same in writing, and it is upon this paper-writing that the first controverted point arises. Was it a deed absolute, conveying all the title which Jones had to Sparks? Or was it but a bond for title? To a certain extent it was both. In consideration of two hundred dollars, the receipt of which is acknowledged, it "granted, bargained, and "sold" to Richard Sparks, all the interest in and to the head-right of one league of land therein described. There was no covenant for title at any future time, or upon the happening of any contingency; nor does it appear from the instrument that anything remained to be done by Sparks to entitle him to all the interest which Jones had in and to the land.

But Jones did bind himself (and in this the instrument par-

takes of the nature of a bond) under a penalty, to remain within the jurisdiction of the Mexican States, for the term required by law to give a full and complete title for the land to Sparks. This was all that remained to be done, fully and completely to execute the contract between the parties, and there is no complaint that Jones did not fully comply with his covenant, thereby vesting a full and perfect title in Sparks.

But the appellees claim that Sparks, in the year 1837, sold the land to Erastus Smith, through whom they claim title.

Jones and Sparks both died, and we are unable to learn the precise date of the demise of either. But, in 1844, Smith instituted a proceeding against Mrs. Sparks, the widow of Richard Sparks, who was the administratrix of her husband's estate, in the County Court of the county of Nacogdoches, setting up by petition that he had bought from Sparks, in his lifetime, the land in controversy, and had executed to him a power of attorney to enable him to obtain title from Jones, and that he had also placed in the hands of Sparks the original paper of the 9th of July, 1835, given by Jones to Sparks, and also the testimonio. This petition concluded with a prayer that Mrs. Sparks, the administratrix, should be ordered to deliver to him said papers, and it appears that an order of the court, in accordance with the prayer of this petition, was made, and the papers were delivered to Smith. And now, it seems, that at the January term of the same court, for the year 1845, letters of administration were granted to John C. Morrison on the estate of Jones, and immediately, at the same term of court, Smith commenced a proceeding against Morrison, to compel him, as the administrator of Jones's estate, to make a deed to the land in controversy, and such proceedings were therein had, as resulted in the court ordering Morrison to make the deed as prayed for; and thus the appellees, who are the widow and sole heir of Erastus Smith, deceased, claim to derive their title.

A proper construction of the law (Hartley's Digest, Articles 1070 and 1071) forbids both the first and second proceeding in

the probate court; which court had no jurisdiction, and all its orders and decrees, without jurisdiction, are null and void.

It is not necessary here to discuss the doctrine of presumptions, when applied to courts of general or of special jurisdiction. The cases of Horan *v.* Wahrenberger, 9 Texas, 313; Mitchell *v.* Runkle, 25 Texas, Sup., 136; Elliott *v.* Piersol, 1 Peters, 328; Mills *v.* Martin, 19 Johnson, 33; Easley *v.* McClinton, 33 Texas, 288; and Withers *v.* Patterson, 27 Texas, 491, are all cases bearing upon this point, and showing that the judgments and decrees of courts of limited jurisdiction cannot be aided by legal presumptions.

But there is nothing in the case to invoke this doctrine—presumptions only supply the place of proof, and they cannot arise to counteract or neutralize the force of reasonable evidence. If the probate court of Nacogdoches county had been a court of general jurisdiction, this case could have stood on no different ground, for the record shows affirmatively that that court had no jurisdiction, either in the matter to compel Mrs. Sparks to surrender the title papers, which were in the hands of her husband at his death, nor had it jurisdiction, on the petition of Smith, to compel Morrison, the administrator of Jones, to make a deed for the land.

In certain cases, by Article 1070, Hartley's Digest, the administrator or executor of an estate or will might petition the court for an order to make title to real estate, in pursuance of the outstanding contracts of the deceased parties whom they represent, and where such contracts are produced to the court, and it is made to appear by evidence that it is to the interest of the estate that such contracts shall be executed, the court will order it done; and in no other case had the probate court power to make such an order. In the case of Smith against Mrs. Sparks, to obtain possession of the title papers, the probate court had no jurisdiction. But it is unnecessary to notice this question farther than to say it was error in the District Court to admit the record in evidence in the case at bar. The heirs of Sparks were not parties to that proceeding. It may be said,

it was not necessary they should be ; nor was it necessary, but it would most assuredly have been, if it had been intended thereby, in any manner, to divest them of the title to the lands which descended to them at the death of their father, subject only to the community rights of their mother, and the rights of their father's creditors, and, it might have been, homestead rights.

It was error alike to admit the record of the proceedings of the probate court in the case of Smith against Morrison in evidence in this case. The heirs of neither Jones nor Sparks, nor those claiming under them, were parties to that proceeding, and the whole proceeding was void for want of jurisdiction. Such an action could only have been had in the District Court. (Hartley's Digest, Article 1071.)

We might stop here and consider this case disposed of. But we are induced to remark, under a sense of duty, that it is very singular that counsel in the case of Smith against Morrison should have represented both parties; that even the probate judge should have interested himself in hunting up a person willing to serve as administrator; that he should have used language to Morrison, to induce him to accept the trust before his appointment; that he should have granted the prayer of the petition without one particle of evidence which can now be discovered, showing a transfer of the title-papers from Sparks to Smith; that he should have failed to take evidence in writing, to be filed and preserved in the records of his court; that he should have assumed jurisdiction upon the simple and totally insufficient allegation, "*late of said county*," when the lands did not lie in his county; when there was no showing, either by Morrison or by Smith, that it was to the interest of Jones's estate that the land should be deeded to Smith. There was no sufficient evidence to show that the county of Nacogdoches was the county of Jones's last residence; nor was there even an averment found in Smith's petition, that he was the legal owner of any bond for title ever made by Jones in his lifetime.

The conduct of Morrison, the administrator, is very noticeable in this case, and is only in part redeemed by the apparent candor with which he details the proceeding, in his deposition. He waives the service of process; accepts the services of Smith's attorney; returns no inventory, for there was no property to invoice; schedules no debts, for there were none to list; suffers everything to go on quietly and smoothly, under the auspices and superintendence of Smith's attorney and Wingfield, the probate judge, who had told him beforehand, he would have little or nothing to do—that all that was wanting was to get a deed to Jones's head-right. And when, two or three years afterwards, there being another probate judge, he is cited to settle his account, he comes into court, innocent of all debts and credits; he had found no property, and nobody had set up any claims; the only thing in the world he had done was to deed away Jones's head-right, *under a strong pressure of circumstances.* We forbear further comment on this case. The judgment of the District Court is reversed, and this court, finding the title to be in the appellants to the lands described in the plaintiffs' petition, do order, adjudge, and decree accordingly.

Reversed and rendered.